On May 20, 1943, Katherine Elsie Vincent Manney executed a will in which John Smith and others were named as legatees. None of the legatees were heirs at law or stood in blood relation to the testatrix who died February 3, 1947. Her will could not be found but a copy of it was produced and offered for probate with application for the appointment of a curator. At this juncture Miss Margaret Davies who had aided in the search for the will, produced it and filed a caveat on the ground that there was a later will executed in 1946, of which she was a beneficiary. Later a niece and nephew of Mrs. Manney filed a second caveat on the ground that Mrs. Manney executed a will in 1946 which revoked the will of 1943. The caveat of Miss Margaret Davies was then dismissed and she withdrew as a party to the proceeding. No trace or copy of the 1946 will has been produced.
The case was tried on the issue of whether or not the 1946 will was in fact executed and if so, did it contain the usual clause revoking all other wills. The probate court gave an affirmative answer to this question. On appeal the Circuit Court found that the 1946 will was executed, but that the evidence was not sufficient to show that it contained a clause revoking all other wills. We are confronted here with an appeal from this decree.
The sole point that we are required to answer, is whether or not the evidence was sufficient to show that the 1946 will contained the usual revocation clause.
The direct evidence on this point is that of Hon. Joe E. Carpenter, lawyer and Justice of the Peace who draughted the 1946 will, and Miss Margaret Davies who was the main beneficiary. The pertinent part of Mr. Carpenter's testimony is on pages 12 and 13 of the record and is as follows:
"Q. In that will (referring to the March 2, 1946 Will), was any statement made with reference to revoking other Wills? A. I have drawn a lot of Wills and I do not recall ever leaving out that particular clause. I always put in the preliminary statement that `all wills heretofore made by me are hereby revoked.'"
Cross Examination.
"Q. You do not know whether, you do not have any independent recollection of whether the other Will, the Will you drew, *Page 536 
gave some of the same bequests as was in the former Will? A. I do not know that. I did not know she had a former Will, but I put in the revoking clause in there whether I knew she had one or not.
"Q. That is your custom? A. Yes."
Carpenter also testified: "I do not know who she had willed her property to prior to his; but her explanation to me, she said, `here is a woman who has been very kind to me and helpful, and she is my nurse and I want to remember her substantially, and I am leaving the bequest to her for that purpose,' and she introduced me to Miss Davies, the lady out here. That was the lady with her."
Miss Davies' Testimony.
"Q. Do you remember distinctly what the Will of 1946 said? A. Yes, it revoked all Wills."
On cross examination.
"Q. Miss Davies, in testifying before when testimony was taken you testified you could not remember the exact wording in that Will. A. I could not remember it, do you mean the revoking of the Will and being of sound mind, is that what you said?
"Q. You said `I remember it said something about being of sound mind and revoking all Wills, but I cannot remember word for word * * * A. I said being of sound mind and memory and understanding. I know it but do not say it perfect. I have my Will here. That is all. He used the same clause in mine.
"Q. What would you say as to revoking other wills, if it had that clause? A. It did have it (pages 38 and 39).
"Q. You haven't an independent recollection? A. No, I cannot say word for word. I cannot say word for word only as she was of sound mind and memory and declaring her last Will and Testament, and revoking other Wills." (See page 39).
Other testimony of Miss Davies.
"Q. You say you were a beneficiary under the Will you failed to find? A. Yes.
"Q. You were the largest beneficiary? A. Yes, I was. (page 40 of the record.)
"Q. Do you know if provision was made in the Will for Lola Cushman? A. Yes.
"Q. How much was left to her? A. Two Thousand Dollars." (Record pages 31 and 32.)
Cross Examination.
"Q. You say you were a beneficiary under the Will you failed to find? A. Yes. (page 40 of the Record.)
"Q. And you are the Mrs. Davies * * *? A. Miss Davies.
"Q. To whom Judge Carpenter referred to as being beneficiary of the Will he drew in 1946? A. That is right."
The testimony of Mrs. Lozo, page 17 of the record strongly corroborates the evidence of Miss Davies. There was other corroborative evidence. In our view the net result of all the testimony is that the will of 1946 was executed and that it contained the usual revocation clause. The draughtsman of the will testified that he "put the revoking clause in there, whether I knew she had one or not." Miss Davies testified that it was there. The fact that she could not "remember word for word" is not unusual. In fact, it would be rather unusual if she did remember the exact words. The important thing is that the revoking clause was in the will. The Probate Judge held that it was in the will.
There is another fact that gives strength to the finding of the Probate Judge. He heard the witnesses testify, saw their demeanor and had an opportunity to evaluate the probative value of their testimony that the Circuit Judge did not have. Nor do we have. He may have observed probative factors that we do not have the advantage of. Hence he should not be reversed unless he is clearly in error.
We think the evidence is such that the Probate Judge could have reasonably reached the conclusion he did. The Circuit Court should not have disturbed it, so his judgment is reversed.
Reversed.
ADAMS, C.J., and SEBRING and ROBERTS, JJ., concur. *Page 537